# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA**
        **Plaintiff,**

  v.                                                           **Case No. 11-CR-212**

**MARTINUS MORGAN**
        **Defendant.**

## SENTENCING MEMORANDUM

Defendant Martinus Morgan pleaded guilty to possessing a firearm as a felon, 18 U.S.C. § 922(g)(1), and I ordered a pre-sentence report ("PSR") in anticipation of sentencing. In calculating the advisory sentencing guidelines, the PSR set a base offense level of 20 under U.S.S.G. § 2K2.1(a)(4), as defendant committed the instant offense subsequent to his conviction of a drug trafficking offense; added 2 levels under § 2K2.1(b)(4)(A), as the firearm defendant possessed had been reported stolen; and then subtracted 3 levels for acceptance of responsibility under § 3E1.1, for a final level of 19. Coupled with defendant's criminal history category of III, level 19 produced an imprisonment range of 37-46 months. I found these calculations correct and adopted them without objection.

I turned then to the imposition of sentence under 18 U.S.C. § 3553(a). Defendant requested a sentence of probation, while the government advocated a prison term within the guideline range. I agreed with defendant that the range was greater than necessary but nevertheless concluded that some confinement was needed to satisfy the statutory purposes of sentencing. This memorandum sets forth the reasons for the sentence imposed.

## I. SECTION 3553(a)

Section 3553(a) directs the sentencing court to consider:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the [advisory] sentencing [guideline] range[;]

(5) any pertinent policy statement ... issued by the Sentencing Commission[;]

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

After considering these factors, the court must "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection." Id. While the guideline range serves as the starting point in making this determination, Gall v. United States, 552 U.S. 38, 49 (2007), the district court may not presume that a guideline sentence is the correct one, Nelson v. United States, 555 U.S. 350, 352 (2009). The court is free to disagree with the Sentencing Commission's policies, see United States v. Corner, 598 F.3d 411, 415 (7th Cir. 2010), and may impose a reasonable non-guideline sentence within statutory limits based on its evaluation of the factors listed in § 3553(a), Pepper v. United States, 131 S. Ct. 1229, 1241 (2011).

**II. DISCUSSION**

**A.    The Offense**

On August 31, 2011, Milwaukee police officers investigating complaints of prostitution on the south-side of the City saw a gray Dodge Magnum parked in the middle of the intersection at South 25th Street and West National Avenue, with a female leaning into the vehicle speaking to the driver. After a minute or so, the woman walked over to a McDonald's restaurant, approached a vehicle waiting in the drive-thru, and handed the driver something. The Dodge Magnum then pulled into the McDonald's parking lot, and the woman entered the passenger side of the vehicle.

Officers waited three to four minutes and then approached the car, detecting the smell of fresh marijuana and observing the driver, later identified as defendant, reach towards his feet. Officers asked defendant to exit his vehicle, but he refused. Officers then pulled defendant from the vehicle, with one of the arresting officers delivering an open handed strike to defendant's face when the officer felt defendant was going to hit him. The officers had to use OC spray to get defendant to calm down. The officers found a loaded pistol on the driver's side floorboard and two corner cuts of marijuana, weighing a total of 1.36 grams, in the center console. On the way to the hospital, defendant stated, "I'm not out here dirty, I only keep the gun for protection."[1]

Because of his prior felony conviction for possession with intent to deliver cocaine,

---

[1] The officers spoke to the female, who stated that she was waiting for a ride when defendant pulled up. She said she talked to defendant in the intersection for awhile and then saw her cousin at McDonald's. She stated that she gave her cousin money to buy her some food and returned to defendant's car, which had pulled into the McDonald's parking lot. She then became uncooperative and refused to answer any more questions. Officers discovered that the woman was on supervision for a 2007 possession of cocaine conviction.

3

defendant could not lawfully possess the firearm. The gun involved in this case was reported stolen from the Beloit Sport Center in Beloit, Wisconsin on December 10, 2000.

In his statement the PSR writer, defendant acknowledged possessing the firearm in his vehicle. He stated that he had closed the auto body shop he runs that night and had a large sum of cash on him for deposit at the bank. He stated that he took the gun for protection while he was carrying the cash but knows he should not have had the firearm because he is a convicted felon. In further statements to the probation officer, defendant indicated that he purchased the firearm through a friend in approximately April of 2011, and that he was in the area of 25th and National to pick up payment for car repairs. He stated that he did not know the area was notorious for prostitution.

**B.     The Defendant**

At age thirty-five, defendant's prior record was not extensive, but it nevertheless caused me some concern given the nature of the instant offense. In 1995, defendant was convicted of disorderly conduct and sentenced to 30 days in jail after he fired shots from a handgun into the air. He also picked up a theft conviction in 1995, arising out of an incident in which he and two other men broke into a car and stole various items. These crimes occurred when defendant was eighteen and might therefore be attributable to youthful stupidity. However, defendant did not stay out of trouble.

In 2004 he was convicted of operating while suspended and obstructing an officer, and in 2005 of carrying a concealed weapon. The 2005 case bore some similarity to the instant offense: a Deputy pulled defendant over for a traffic violation and observed him dipping his right side as if trying to grab or place something underneath the front passenger seat. During a search of the vehicle, the Deputy recovered four bags of a green leafy substance, later

4

determined to be marijuana, and a handgun from underneath the front center console.

Finally, in 2007, defendant was convicted of possession with intent to distribute cocaine (the predicate felony conviction here), receiving a sentence of 3 years probation with 90 days condition time. He was able to complete that period of probation, and he complied with pre-trial release conditions in this case, which showed that he knew how to follow the rules while being supervised. However, his previous gun cases remained a concern.

Defendant's background and character were otherwise quite positive. He had been in a long-term relationship, and he and his girlfriend had two daughters, ages fifteen and seven. Defendant's girlfriend described defendant as a good person, family oriented, and a good father. She told the PSR writer that she started her job early and defendant took care of getting their children to school. He also made himself available for school functions and to meet with teachers as needed. For the past seven years, defendant lived with his girlfriend and their children in a home she owns. During his sentencing allocution, defendant spoke of the importance of his family.

Defendant earned his GED working through a Job Corps Center from 1994 to 1996. From 1996 to 2001, he worked for AO Smith, and from 2001 to 2004 for Eaton Corporation. For the past nine years he operated his own auto repair business.

Defendant admitted some occasional use of marijuana, but he did not appear to have a significant substance abuse problem (or any other correctional treatment needs for that matter). He submitted several positive letters, which depicted him as a person with many good qualities.

**C.    The Sentence**

The guidelines called for a term of 37-46 months, but I agreed with defendant that the

5

range was greater than necessary. There were two flaws in the guideline as applied in this case.

First, defendant's base offense level was set at 20 rather than 14 because of his prior drug case. As I discussed in United States v. Fogle, 694 F. Supp. 2d 1014, 1017-18 (E.D. Wis. 2010), the Sentencing Commission, without adequate explanation, decided to treat prior drug distribution cases, even those involving no violence or weapons, the same as crimes of violence in U.S.S.G. § 2K2.1(a). The Commission may have based its decision on the fact that Congress did something similar in the Armed Career Criminal Act, but guidelines that simply reflect congressional enactments do not represent an exercise of the Commission's proper institutional role and are accordingly entitled to less respect. See Kimbrough v. United States, 552 U.S. 85, 96-97 (2007). In cases where the offense level is increased from 14 to 20 based on a minor, prior drug case, § 2K2.1(a) may overstate the risk that the defendant-felon poses with a gun. See Fogle, 694 F. Supp. 2d at 1018. Level 20 overstated defendant's risk with a gun in this case. His prior drug case was minor, involving just 1.89 grams of cocaine, with no suggestion of weapon possession or violence. The sentence of probation and condition time suggested that the state court judge saw the case as relatively minor too.

Second, defendant received a 2 level enhancement for possession of a stolen gun under the strict liability provision of U.S.S.G. § 2K2.1(b)(4). The record contained no evidence that defendant knew the gun was stolen, which made this enhancement a poor fit when it came to measuring his actual culpability. See United States v. McBride, 789 F. Supp. 2d 1024, 1028 (E.D. Wis. 2011); United States v. Jordan, 740 F. Supp. 2d 1013, 1016 (E.D. Wis. 2010). The PSR indicated that the gun was stolen in 2000, some eleven years before defendant's acquisition of it. I therefore did not see this as a significant aggravating factor.

Absent these two enhancements, the range would have been 15-21 months. I also took into account under § 3553(a) defendant's devotion to his children, his solid employment record, and the positives discussed in the letters. The guidelines consider only the bad things a person has done in his life, not the good. Section 3553(a) requires the court to take a balanced look at the case. See United States v. Ranum, 353 F. Supp. 2d 984, 986 (E.D. Wis. 2005). Given the positives in the record, including the absence of any history of violence, I did not see defendant as posing a threat to public safety.

Based on the flaws in the guideline, and in light of his strong family ties, defendant requested a sentence of probation. However, there were other factors in this case that I could not ignore, factors which made defendant's recommendation inappropriate.

The first was defendant's prior record, discussed above. While his prior drug case did not cause me to view the instant offense as more serious than the typical felon in possession case, he did have two prior cases involving firearms. He should have realized, prior to his arrest in this case, that guns were not doing him any good. The need for specific deterrence was not satisfied by a sentence served entirely in the community in this case.

Second, I could not overlook the circumstances of defendant's arrest in this case. While I made no finding as to what defendant was doing on the south-side on the night of his arrest,[2] even under the most charitable interpretation defendant found himself in a position inconsistent with his presentation as a dedicated family man. Worse, he struggled with the officers, and he

---

[2]In his sentencing memo, defendant denied that he was looking to buy drugs or solicit a prostitute. Rather, he stated that he was on the south-side picking up money and saw an attractive woman who looked like she was waiting for a ride, so he offered her one. When the woman explained that a friend was coming to get her food through the McDonald's drive-thru, he agreed to meet her in the parking lot to chat while she ate the food. He acknowledged that this might give some pause given his commitment to his daughters and family.

7

had marijuana in the car. I saw no reason to disbelieve defendant's claim regarding why he acquired the weapon (for protection when he collected and carried cash); I also accepted that he did not carry the gun on a regular basis. But I hear this "protection" claim frequently, and it often rings hollow, as it did here. It seems that only negative things happen when someone in defendant's position possesses a gun. The fact that he was not using the gun as part of a drug transaction did not mitigate the offense; if he had been using the gun in connection with drug activity, or if he had turned the gun on the officers, he would have been looking at much more serious charges.

I agreed that defendant had done well on supervision in the past; he also did well on pre-trial release in this case. I did not see him as a bad risk in that regard. However, there was a need for a period of confinement to reflect the seriousness of the offense, promote respect for the law, and to deter defendant from possessing firearms.

Balancing all of these factors, I found it appropriate to impose a split sentence with a total length of 12 months, consisting of 6 months in prison and 6 months of home confinement. This term, just a bit below the range absent the flawed enhancements discussed above, provided sufficient punishment and deterrence. The home confinement portion provided additional punishment and structure, while permitting defendant to work and care for his children.

### III. CONCLUSION

Therefore, I committed defendant to the custody of the Bureau of Prisons for 6 months. Based on his financial situation, I determined that he lacked the ability to pay a fine and so waived the fine. I required him to perform community service in lieu of the fine. Upon release, I ordered defendant to serve 2 years of supervised release, a term sufficient to ensure

8

monitoring and legitimate employment. As a condition of supervised release, I required him to serve 180 days of home confinement. Other terms and conditions of the sentence are found in the judgment.

Dated at Milwaukee, Wisconsin, this 6th day of April, 2012.

/s Lynn Adelman
_____
LYNN ADELMAN
District Judge